OPINION
{¶ 1} Plaintiff-appellant, Angela An ("appellant"), appeals from a judgment entry and decree of divorce entered by the Franklin County Court of Common Pleas, Division of Domestic Relations.
 {¶ 2} Appellant and defendant-appellee, Anthony J. Manson ("appellee"), were married in 1999 and separated in September 2004. No children were born of the marriage. The couple initially resided in Salt Lake City, Utah, where appellee worked two [D1] 2 jobs as a pharmacist earning approximately $90,000 a year and appellant worked as an on-air personality in the television industry earning approximately $30,000 a year. Appellant then accepted a career — advancing position with a Columbus television station earning approximately $65,000 a year (net of agent's commission) at the time of separation. For the final three years of the marriage appellee worked very limited hours as a pharmacist while he attended The Ohio State University Medical School. The couple resided in Columbus in a home purchased with a down payment produced by the sale of appellant's prior home in Salt Lake City.
 {¶ 3} The trial court found that the valuation of the couple's property, both separate and marital, was complicated by a number of factors. Chief among these was the fact that the couple benefited greatly in maintaining their standard of living during the period in which appellee was a full-time medical student due to the generosity of appellant's parents, who currently reside in Taiwan. Appellee admits appellant's parents largely paid for his first three years of medical school, although he was constrained to obtain a $40,000 loan after the marriage collapsed in order to pay for his final year of medical school tuition and living expenses.[1] In addition, appellant claimed during proceedings in the trial court that much of the personal property held by the couple, including two automobiles, in fact belonged to her parents and was merely held in appellant's name until the day when her parents would return to the United States to live.
 {¶ 4} After considering the trial testimony and documentary evidence, the trial court rendered findings of fact and conclusions of law allocating the separate and marital property as follows. The court found that the couple were joint owners of the marital residence on Chesterfield Road in Columbus, that the stipulated fair market value was $165,000, and that of the $141,000 purchase price in August 2000, $33,200 was directly traceable to appellant's separate property generated by the sale of her pre-marital residence. After subtracting a first mortgage of $104,134 the court found that after setting aside appellant's separate contribution the balance of the net equity in the house, $27,666, was a marital asset to be equitably divided between the parties. The court further found that a second mortgage in the form of a home equity line of credit with a balance due of $28,530 was opened by the parties in November 2003, with the intent that the parties would pay off existing credit card debt with the proceeds, but that the best interpretation of the scant information on this expenditure indicated that appellant used funds from the home equity loan to purchase a 2002 Lexus vehicle rather than to pay off the credit card debt. The court accordingly found that the balance due on the home equity line of credit would be attributed to appellant as her separate debt and not divided between the parties. The court, as a result, also found that the 2002 Lexus automobile, with a fair market value of $23,950, would also be allocated as appellant's separate property due to her assumption of the corresponding debt burden.
 {¶ 5} With respect to the parties' other vehicles, the court found that appellee is the titled owner of a 1999 Toyota Solara automobile with a market value of $9,666 and that this vehicle would be considered a marital asset with its value subject to equitable division between the parties. With respect to a 1990 Mazda Miata titled in appellant's name, the court found that this was stipulated by the parties to be a separate asset belonging to appellant and not subject to equitable distribution.
 {¶ 6} Addressing the parties' retirement assets, the court found that appellant was the named owner of three retirement accounts: (A) a Cap One Group IRA with a fair market value of $11,152, which the court found to be a marital asset; (B) a Dispatch Printing Company 401(k) account with a market value of $14,191, which the court found to be a marital asset; and (C) a WBNS 401(k) with a fair market value of $20,531, of which the court found $14,978 to be a separate property representing appellant's 401(k) plan from a prior employer and the balance of $5,553 to be a marital asset. The court found that appellee held a premarital 401(k) retirement account that was entirely his separate property.
 {¶ 7} The court found that appellant would retain title to a Fidelity Mutual Fund account in her name with a balance of $6,833 as her separate property.
 {¶ 8} Turning to the parties' credit card debt, the trial court found that the parties had significant balances on three different credit cards totaling $29,237 as of the date of separation, that all these debts were marital obligations, and that this debt would be equitably distributed by the court. The court further found that appellant entered the marriage with a significant amount of credit card debt, which the court valued at $15,000 based on appellee's testimony, that the parties paid this debt using funds acquired during the marriage from appellee's pharmacy student loan, and that appellee would receive credit in the allocation of marital property for repayment of one-half of this separate debt.
 {¶ 9} Finally, the trial court allocated appellee's student loans incurred prior to the marriage for payment of his pharmacy schooling and late in the marriage for payment of his last year of medical school as his separate debt.
 {¶ 10} In allocating the marital assets, the court awarded the marital residence to appellant, the Lexus to appellant, the Toyota Solara to appellee, with one-half of its value as compensation to appellant, and the parties' respective current checking accounts each free and clear of the claims of the other. The trial court awarded each party one-half of the marital portion of the retirement accounts described above, to be distributed where necessary by means of a qualified domestic relations order (QDRO).
 {¶ 11} Based upon this distribution of marital assets and debts, the court ordered appellee to pay $1,185 to equalize the distributions to appellant.
 {¶ 12} The trial court then made findings pursuant to R.C. 3105.18(C) in determining whether spousal support would be paid by either party. The trial court noted appellant's 2004 income of $65,000, appellee's 2004 income of just over $8,000, and his current income of $37,000 earned in the first year of a four-year anesthesiology residency. The court found that both parties were fully employed, educated, and in good health. The court consequently found that no award of temporary or permanent spousal support was appropriate. The court divided court costs equally between the parties and found the parties each to be responsible for their own attorney's fees.
 {¶ 13} Appellant has timely appealed and brings the following four assignments of error:
 Assignment of Error One The trial court failed to follow and abide by Section 3105.171 of the Ohio Revised Code. Assignment of Error Two The trial court failed to make independent Findings of Fact and Conclusions of Law as required by Rule 52 of the Ohio Rules of Civil Procedure. Assignment of Error Three The trial court's findings are against the manifest weight of the evidence. Assignment of Error Four The trial court failed to award spousal support dictated by ORC 3105.18.
 {¶ 14} For convenience of analysis, we will address these assignments of error out of numerical order.
 {¶ 15} Appellant's second assignment of error asserts that the trial court did not fulfill its duty to make independent findings of fact and conclusions of law, apparently because the trial court adopted more or less verbatim the proposed findings of fact and conclusions of law submitted by appellee. Civ. R. 52 imposes a mandatory duty on a trial court to provide written findings of fact and conclusions of law upon request from either party when a case is tried to a court without a jury. Werden v. Crawford (1982), 70 Ohio St.2d 122, 24 O.O.3d 196,435 N.E.2d 424. The rule allows the court to request the parties to submit proposed findings, and adoption of one party's findings in preference to another's will not of itself constitute error on the part of the trial court, Adkins v. Adkins (1988), 43 Ohio App.3d 95, 539 N.E.2d 686, absent strong indication that the trial court, in adopting proposed findings without modification, failed to take the time to carefully review the facts of law surrounding the case. Gotlieb v. Gotlieb (1991), Franklin App. No. 98AP1131.
 {¶ 16} A review of both the trial court's decision and the conduct of the trial court as reflected in the transcript indicates that the trial court in this case in no way abdicated its responsibility to review the testimony and documentary evidence and reach its own independent conclusions. The proposed findings of fact and conclusions of law submitted by Appellee do not uniformly reflect his positions at the outset of proceedings in this case, and were manifestly shaped by the trial court's interlocutory pronouncements and ultimate judgment during the course of the trial. As such, the findings appropriately reflect the determinations by the court, and the court did not abdicate its responsibility to adjudicate the matter before it merely by adopting the proposed findings submitted by Appellee in preference to those submitted by appellant. We accordingly find no procedural error on the part of the trial court in adopting Appellee's proposed findings of fact and conclusions of law, although the actual content of those findings may be again reviewed for substantive error in connection with appellant's other assignments of error. Appellant's second assignment of error is overruled.
 {¶ 17} Appellant's first and third assignments of error present interrelated issues and will be addressed together. In substance, these assignments of error assert that the trial court's allocation of marital and separate property and division of the marital property are not supported by the manifest weight of the evidence and do not comply with R.C.3105.171, the statute governing this process.
 {¶ 18} When reviewing a trial court's decision on a manifest weight of the evidence basis, we are guided by the presumption that the factual findings of the trial court were correct. The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, 39 O.O.2d 366,227 N.E.2d 212, paragraph one of the syllabus. The rationale for this presumption is that the trial court is in the best position to evaluate the evidence by viewing witnesses and observing their demeanor, voice inflections, and gestures. Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 10 OBR 408, 461 N.E.2d 1273. Likewise, documentary evidence is best viewed in the context of the entire scope of evidence heard at trial, and the trier of fact is in the best position to assess the global weight of all evidence heard. Thus, judgments supported by some competent, credible evidence going to all the essential elements will not be reversed by a reviewing court as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Const. Co. (1978),54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578.
 {¶ 19} R.C. 3105.171 provides for the distribution of separate and marital property in a divorce or dissolution:
 (B) In divorce proceedings, the court shall, and in legal separation proceedings upon the request of either spouse, the court may, determine what constitutes marital property and what constitutes separate property. In either case, upon making such a determination, the court shall divide the marital and separate property equitably between the spouses, in accordance with this section. For purposes of this section, the court has jurisdiction over all property in which one or both spouses have an interest. (C)(1) Except as provided in this division or division (E) of this section, the division of marital property shall be equal. If an equal division of marital property would be inequitable, the court shall not divide the marital property equally but instead shall divide it between the spouses in the manner the court determines equitable. In making a division of marital property, the court shall consider all relevant factors, including those set forth in division (F) of this section. (2) Each spouse shall be considered to have contributed equally to the production and acquisition of marital property. (3) The court shall provide for an equitable division of marital property under this section prior to making any award of spousal support to either spouse under section 3105.18 of the Revised Code and without regard to any spousal support so awarded. * * * (D) Except as otherwise provided in division (E) of this section or by another provision of this section, the court shall disburse a spouse's separate property to that spouse. If a court does not disburse a spouse's separate property to that spouse, the court shall make written findings of fact that explain the factors that it considered in making its determination that the spouse's separate property should not be disbursed to that spouse. (E)(1) The court may make a distributive award to facilitate, effectuate, or supplement a division of marital property. The court may require any distributive award to be secured by a lien on the payor's specific marital property or separate property. (2) The court may make a distributive award in lieu of a division of marital property in order to achieve equity between the spouses, if the court determines that a division of the marital property in kind or in money would be impractical or burdensome. * * * (F) In making a division of marital property and in determining whether to make and the amount of any distributive award under this section, the court shall consider all of the following factors: (1) The duration of the marriage; (2) The assets and liabilities of the spouses; (3) The desirability of awarding the family home, or the right to reside in the family home for reasonable periods of time, to the spouse with custody of the children of the marriage; (4) The liquidity of the property to be distributed; (5) The economic desirability of retaining intact an asset or an interest in an asset; (6) The tax consequences of the property division upon the respective awards to be made to each spouse; (7) The costs of sale, if it is necessary that an asset be sold to effectuate an equitable distribution of property; (8) Any division or disbursement of property made in a separation agreement that was voluntarily entered into by the spouses; (9) Any other factor that the court expressly finds to be relevant and equitable. (G) In any order for the division or disbursement of property or a distributive award made pursuant to this section, the court shall make written findings of fact that support the determination that the marital property has been equitably divided and shall specify the dates it used in determining the meaning of "during the marriage." (H) Except as otherwise provided in this section, the holding of title to property by one spouse individually or by both Spouses in a form of co-ownership does not determine whether the property is marital property or separate property.
 {¶ 20} In applying this statutory provision, a trial court has broad discretion in determining the allocation of marital and separate property and the division of marital property in a divorce case.Berish v. Berish (1982), 69 Ohio St.2d 318, 319, 23 O.O.3d 296,432 N.E.2d 183. It is inadvisable, and in practice impossible, for any court to attempt to set down a flat rule concerning property division in a divorce. Cherry v. Cherry (1981), 66 Ohio St.2d 348, 355, 20 O.O.3d 318,421 N.E.2d 1293. A trial court's decision in such matters will be reversed only upon showing of an abuse of discretion, meaning that the trial court's decision reflects an attitude that is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.
 {¶ 21} When making the equitable division of marital property, the trial court must rely on competent, credible evidence in ascertaining the value of marital assets. Hightower v. Hightower, Franklin App. No. 02AP-37, 2002-Ohio-5488, at ¶ 22; Moro v. Moro (1990),68 Ohio App.3d 630, 637, 589 N.E.2d 416. A trial court must have a rational, evidentiary basis for assigning value to marital property. McCoy v.McCoy (1993), 91 Ohio App.3d 570, 576-578, 632 N.E.2d 1358.
 {¶ 22} The first division of marital property complained of by Appellant is the allocation of the 2002 Lexus vehicle as marital property rather then separate property, its distribution to her in the property division, and the corresponding assignment to her of the home equity line of credit debt which the trial court found to have financed the purchase of the vehicle. Appellant asserts that the Lexus vehicle was purchased by her parents as a gift to her, and is not traceable to specific debt in the form of the home equity line of credit.
 {¶ 23} In assessing the testimony and evidence on this point, the trial court was handicapped, as elsewhere in this case, by the unconventional state of the couple's finances during the marriage due to extremely large cash gifts from Appellant's parents and a lack of documentary evidence or even specific recollection by the parties to trace such gifts to subsequent acquisitions of assets. There was conflicting testimony over how the Lexus vehicle was acquired, and the trial court chose to give greater credence to Appellee's recollection and reconstruction of the couple's finances during this period. When addressing proposed error under manifest weight of the evidence standard, we are hesitant to freely substitute our judgment for that of the trial court when assessing the relative credibility of testimony, particularly where testimony to the contrary is hardly less vague or unsupported. We accordingly find no error on the part of the trial court in allocating the Lexus vehicle and home equity line of credit debt as it did.
 {¶ 24} The next item complained of by Appellant is the allocation of the Toyota Solara automobile as marital property. Appellant asserts that she entered the marriage with a Toyota 4-Runner as her separate property, and that during the marriage, this vehicle was stolen and the insurance money then went to pay for the Solara, which should consequently be traceable as separate property. As the trial court noted, evidence supported that the parties did purchase the Solara as a replacement for the 4-Runner, but also establishes that they incurred a loan for the purchase of the Solara rather than immediately paying cash from the insurance proceeds. The parties disagreed on how the insurance money was disposed of and what funds were subsequently used to pay off the loan. The presumption is that assets acquired during the course of the marriage are marital property, Barkley v. Barkley (1997),119 Ohio App.3d 155, 694 N.E.2d 989, and the state of the record does not support a conclusion that the trial court abused its discretion in relying on this presumption, in the face of conflicting testimony, to determine that the Solara constituted a marital asset.
 {¶ 25} Appellant also asserts that the trial court erred in determining that she entered the marriage with approximately $15,000 credit card debt, that the debt had been paid down either with marital funds or the proceeds from appellee's pharmacy school loans, and that appellee should consequently be given credit for one-half this amount as disposing of a pre-marriage liability belonging to appellant. This finding by the trial court essentially and accurately reflects testimony by Appellee which the trial court was free to believe. Appellant presented no conclusive documentary evidence to the contrary and her testimony in fact is extremely vague on the question of how her acknowledged premarital credit card debt was retired. There is no basis for a finding of an abuse of discretion on the part of the trial court in making this determination.
 {¶ 26} Finally, appellant argues that the trial court failed to take into account the large sums of money received from her parents and expended on appellee's medical school tuition during the marriage. Appellee did not dispute that these sums were received and expended on his medical school tuition. The trial court concluded, however, that to the extent that these amounts were gifts to the couple, they had been dissipated and represented neither an asset nor liability. The trial court further found, moreover, that if the sums were in fact an interest-free loan, as is contended in the companion action brought by appellant's parents to recover from appellee, this debt would represent a separate liability belonging solely to appellee. This last conclusion is not at all disadvantageous to appellant. While appellant understandably attempts to articulate a sense of injustice over the fact that appellee entered the marriage without a medical degree and emerged having largely attained one while incurring very little debt due to the generosity of appellant's parents, Ohio does not permit valuation and distribution of a mere professional license or degree (as opposed to an active professional practice) in making a property distribution.Stevens v. Stevens (1986) 23 Ohio St.3d 115, 117-118, 230 OBR 273,492 N.E.2d 131. As such, appellee's medical degree was properly omitted from marital assets by the trial court. Appellant cannot now, based upon the failure of the marriage, claim to herself take back in some form or another that which her parents freely gave (or loaned) and the couple freely spent, regardless of whether her parents ultimately prevail in their action to recoup those funds. We accordingly find no error on the part of the trial court in this aspect of the valuation and division of marital property.
 {¶ 27} Based upon the foregoing, we find that the trial court did not abuse its discretion or fail to comply with R.C. 3105.171, and appellant's first and third assignments of error are overruled.
 {¶ 28} Appellant's fourth and final assignment of error asserts that the trial court erred in failing to award spousal support pursuant to R.C. 3105.18. The statute provides that the trial court shall consider the following factors in such an award:
 (C)(1) In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors: (a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code; (b) The relative earning abilities of the parties; (c) The ages and the physical, mental, and emotional conditions of the parties; (d) The retirement benefits of the parties; (e) The duration of the marriage; (f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home; (g) The standard of living of the parties established during the marriage; (h) The relative extent of education of the parties; (i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties; (j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party; (k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought; (l) The tax consequences, for each party, of an award of spousal support; (m) The lost income production capacity of either party that resulted from that party's marital responsibilities; (n) Any other factor that the court expressly finds to be relevant and equitable. (2) In determining whether spousal support is reasonable and in determining the amount and terms of payment of spousal support, each party shall be considered to have contributed equally to the production of marital income.
 {¶ 29} Reviewing these factors, we acknowledge that the trial court was in a difficult position when assessing the relative financial positions of the parties and the appropriateness of an award of spousal support. While Ohio, in contrast to other states, does not allow for a capitalized valuation of a professional degree in a property division, such a degree may be considered an award of spousal support.Stevens, supra, at 118. Appellee's projected income during his four-year residency program would increase little if at all over his income of $37,000 per year at the time of trial. Appellant earned approximately $70,000, less agent's fees, at the time of trial. Appellee concedes that his prospective income, once his medical residency is completed, is likely to be $250,000 yearly or more. Thus, the relative income of the parties and the contribution of each party to the education, training, and earning ability of the other would support an award of spousal support to appellant in this case if one takes the long view of appellee's income prospects. In the short run, however, an award is inappropriate due to appellee's lower income, Appellant's higher income and other resources, and the distant and still somewhat speculative increase in appellee's future income stream, which was still over three years from realization at the time of trial. The parties have furnished no case directly on point with these unique facts, nor would we feel compelled to follow such authority if it were found, given the mandate to assess such questions on a case-by-case basis. However, in view of the relatively long-term of appellee's reduced income during his residency, appellant's relative financial security, and the rather short duration of the marriage, we do not find any abuse of discretion of the trial court's decision not to award spousal support to appellant. Appellant's fourth assignment of error is accordingly overruled.
 {¶ 30} In accordance with the foregoing, appellant's first, second, third and fourth assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, is affirmed.
Judgment affirmed.
 PETREE, J., concurs. BRYANT, J., concurs separately.
[1] Appellant's parents have sought to characterize past payment of tuition as no-interest loans and are seeking to recover some $68,000 from appellee in a separate action in the General Division of the Franklin County Court of Common Pleas. Appellee characterizes such payments as gifts.