[Cite as *McKinley v. Hall*, 2024-Ohio-3100.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Kristen E. McKinley, | : | |
| Plaintiff-Appellant, | : | No. 23AP-367 |
| | | (C.P.C. No. 18DR-1651) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Michael G. Hall, Jr., | : | |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on August 15, 2024

**On brief:** *Mary C. Ansbro*, for appellant.

APPEAL from the Franklin County Court of Common Pleas,
Division of Domestic Relations

LELAND, J.

{¶ 1} Plaintiff-appellant, Kristen E. McKinley, appeals from the judgment and divorce decree entered by the Franklin County Court of Common Pleas, Division of Domestic Relations, ending her marriage to defendant-appellee, Michael G. Hall, Jr. For the following reasons, we affirm.

## I. Facts and Procedural History

{¶ 2} McKinley and Hall were married in April 2010 and did not have children together. McKinley filed a complaint for divorce in April 2018, and Hall filed an answer and counterclaim. As the case proceeded, Hall filed a motion to compel discovery, which McKinley opposed. The trial court ordered the parties to exchange notebooks with, among other items, copies of all the exhibits they intended to introduce at trial, bank and account statements, and deed and mortgage documentation for any parcel of real estate owned by the party.

{¶ 3} The matter proceeded to a contested, 12-day bench trial in late May and June 2021 where both parties appeared and were represented by counsel. The parties entered stipulations as to their residency, the de facto span of their marriage (April 4, 2010 through April 30, 2020), their incompatibility as husband and wife, and the authenticity and admissibility of a variety of documents, including bank records, credit card statements, and real estate and retirement account records. McKinley and Hall each testified on their own behalf and were the only witnesses. Each party generally agreed that McKinley owned a Columbus property separately and Hall owned a Hillsboro property separately, with each testifying they at times assisted with the other party's property.

{¶ 4} Despite the stipulations, lack of issues concerning children, and limited witnesses, the trial often stalled due to the parties' disagreements on the admission of exhibits and their attempts to locate exhibits among the substantial assemblage of documents, which were mostly supplied by McKinley. The trial court permitted both parties to amend or supplement the record beyond what was provided in their notebooks, often to gain records that assisted the court in filling in gaps of information corresponding to the de facto marriage period.

{¶ 5} One disagreement concerning admission of an exhibit led to McKinley's counsel to move for a mistrial. The issue began when Hall's counsel attempted, on redirect of Hall's testimony, to admit exhibit GG, a 2013 mortgage document for Hall's Hillsboro property that had not been presented to McKinley prior to trial but that Hall sought to use to rebut cross-examination questioning. The parties had an off-the-record discussion with the judge about the relevance of exhibit GG, after which Hall's counsel withdrew the exhibit. However, prior to commencing re-cross of Hall, McKinley's counsel moved for a mistrial based on "spurious allegations" made in-chambers including accusations of forgery of the 2013 mortgage document and misappropriation of the resulting $58,061 check. (Tr. Vol. 12 at 693.) The trial court denied the motion, and McKinley proffered exhibit GG for purposes of appeal.

{¶ 6} After the close of trial, the parties each submitted proposed findings of fact and conclusions of law. The trial court issued the divorce decree on May 19, 2023. At the outset of the decree, the trial court listed the submitted and admitted evidence, with no reference to exhibit GG, and took notice of the parties' joint stipulations. In accordance

with the stipulations, the trial court terminated the marriage contract and proceeded to address the contested issues raised by the parties, including the division of real property, personal property, vehicles, financial accounts, retirement accounts, and debt as well as alleged financial misconduct, spousal support, legal fees, and miscellaneous orders.

{¶ 7} For the real property division, the trial court found the Columbus property to be McKinley's separate property with an assigned value of $195,500 based on testimony and evidence of the current auditor's value, and found the Hillsboro property, which it determined to consist of two parcels of land holding the same address, to be Hall's separate property with an assigned value of $175,000 based on testimony and evidence contained in Hall's affidavit of property.

{¶ 8} The trial court then, in pertinent part, awarded Hall a distribution of $58,061 after determining Hall showed that amount is traceable debt, i.e. equity proceeds, on the Hillsboro property and that McKinley retained those proceeds "sometime in 2014" for her personal benefit thereby committing financial misconduct to warrant a distribution. (Divorce Decree at 10.) The trial court indicated that its finding concerning the $58,061 was based on the stipulations, physical evidence, and testimony of the parties and, specifically, McKinley's admission that she took possession of a check with those funds from Bank of America sometime in 2014 and could not explain what happened to that money.

{¶ 9} Considering the parties assets, the trial court found it equitable to split the balances on the parties' numerous bank accounts equally and to award each party 50 percent of the marital portion of the parties' retirement and pension accounts, with the parties retaining his or her separate property component of each retirement or pension account. To execute division of the retirement and pension accounts, the trial court ordered utilization of a "traditional coverture fraction" and established the marital portion of the retirement accounts and pensions as those amounts accumulated during the stipulated de facto marriage period of April 4, 2010 to April 30, 2020. (Divorce Decree at 20.)

{¶ 10} The trial court next determined the division of the parties' debts. The trial court rejected McKinley's contentions that debts she identified as solely for Hall's benefit—including payment of fees related to Hall's custody case, her in vitro fertilization, and his vasectomy reversal—should be counted as Hall's separate debt or otherwise entitled

McKinley to a distribution. The trial court reasoned the debts were incurred during the marriage using marital funds, McKinley controlled the bulk of spending of marital funds, and there was no indication the parties did not incur the debt in support of their relationship and on behalf of their blended family.

{¶ 11} The trial court likewise rejected McKinley's request for an $8,499.50 distributive award for tax returns from 2017 to 2020. The trial court explained the couple made the financial decision to file their taxes as married filing separately, resulting in net difference in refunds and owed taxes between the parties, without any evidence showing they had an expectation the benefit and/or debt would be reallocated from a joint benefit to an individual benefit once the marriage was over.

{¶ 12} Next, the trial court addressed the significant amount of credit card debt the parties incurred using over ten credit cards in each of their names. The trial court determined that, generally, the expenditures were made during the marriage and re-paid using marital funds. However, McKinley requested several of the credit card debts be assigned as Hall's separate debts, including the Best Buy card, the Big Sandy Superstore card, two Chase cards, the Greensky card, the Home Depot card, and the Lowe's card. The trial court found there was conflicting evidence as to the Home Depot, Lowe's, and Greensky accounts that were in Hall's name, and ultimately determined that credit card debt was incurred for repairs performed at the Hillsboro property and therefore constituted Hall's separate debt. The trial court treated the remaining credit card debt as marital debt and split it evenly. The trial court refused to analyze the other individual expenditures made during the marriage that McKinley asserted were made solely for Hall's benefit, remarking "[w]hen a marriage ends, there is no automatic presumption of being reimbursed for every expense made that benefitted on one (1) party or their extended family members." (Divorce Decree at 29-30.)

{¶ 13} Finally, the trial court addressed both parties' allegations of financial misconduct. The trial court determined McKinley did not commit financial misconduct related to her representation of Hall in a dog-bite claim but did commit financial misconduct concerning $18,000 in insurance proceeds from the Hillsboro property and concerning the $58,061 check from Bank of America that the trial court had already discussed in relation to the real property distributions. Specific to the $58,061 check, the

trial court determined the check was "an overpayment payoff amount" resulting from a refinance of the Hillsboro property and therefore was Hall's separate property, the check was sent to Hall, McKinley took possession of it to determine why it was sent, and that McKinley misappropriated the funds for her own benefit. (Divorce Decree at 34.) Within this analysis, the trial court referenced exhibit GG as additional support for Hall's testimony that he refinanced the Hillsboro property and took "judicial notice" of the loan amount information on that document. (Divorce Decree at 33.)

{¶ 14} The trial court did not find an award of spousal support or attorney fees to be appropriate in this case and, after accounting for all distributions and offsets, ordered McKinley to pay Hall $51,101.37.

## II. Assignments of Error

{¶ 15} McKinley appeals and assigns the following six assignments of error for our review:

> [I.] THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING PLAINTIFF-APPELLANT'S MOTION FOR MISTRIAL.
>
> [II.] THE TRIAL COURT ABUSED ITS DISCRETION BY NOT EQUITABLY DIVIDING THE ASSETS AND DEBTS.
>
> [III.] THE TRIAL COURT ABUSED ITS DISCRETION IN THE CLASSIFICATION OF THE MARITAL AND SEPARATE NATURE OF DEBTS.
>
> [IV.] THE TRIAL COURT ABUSED ITS DISCRETION IN FINDING FINANCIAL MISCONDUCT.
>
> [V.] THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN ADMITTING DEFENDANT-APPELLEE'S EXHIBITS.
>
> [VI.] THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN FORCING PLAINTIFF-APPELLANT TO PRODUCE SUMMARY EXHIBITS MID TRIAL.

On June 30, 2023, Hall filed a notice of cross-appeal. However, Hall did not file a brief in support of his cross-appeal. Accordingly, we dismiss Hall's cross-appeal for failure to prosecute.

### III. Analysis

{¶ 16} With this appeal, McKinley challenges the trial court's determination a mistrial was not warranted, the classification and allocation of marital and separate assets and debts, the finding of misconduct, and determinations concerning exhibits. Having reviewed each assignment of error and the record of the case, we conclude McKinley has not demonstrated prejudicial error warranting reversal.

### A. Motion for mistrial

{¶ 17} In her first assignment of error, McKinley contends the trial court abused its discretion in denying her motion for mistrial concerning the off-the-record discussions of exhibit GG. For the following reasons, we disagree a mistrial was warranted on this record.

{¶ 18} A motion for mistrial "appears to apply almost exclusively to criminal cases" and is not directly addressed in the civil procedure rules. *Hampton v. Saint Michael Hosp.*, 8th Dist. No. 81009, 2003-Ohio-1828, ¶ 29. Where this issue has been raised in a civil case, this court and the Supreme Court of Ohio have reviewed a trial court's denial of a motion for mistrial under the same standard used to review the denial of a motion for new trial under Civ.R. 59. *Weinstock v. McQuillan*, 10th Dist. No. 09AP-539, 2010-Ohio-1071, ¶ 9; *Jones v. Cleveland Clinic Found.*, 161 Ohio St.3d 337, 2020-Ohio-3780, ¶ 28.

{¶ 19} In part pertinent to the error assigned here, Civ.R. 59(A) states that a new trial may be granted to all or any of the parties based upon the "[i]rregularity in the proceedings of the court, jury, magistrate, or prevailing party, or any order of the court or magistrate, or abuse of discretion, by which an aggrieved party was prevented from having a fair trial" in addition to a catch all provision permitting the trial court to grant a new trial in its "sound direction * * * for good cause shown." Civ.R. 59(A) and (A)(1). *See Hillman v. Kosnik*, 10th Dist. No. 07AP-942, 2008-Ohio-6303, ¶ 17 ("A mistrial should only be granted when the party seeking it demonstrates that he or she has suffered material prejudice such that a fair trial is no longer possible.").

{¶ 20} The decision of the trial court to grant or deny a motion for mistrial will not be reversed absent an abuse of discretion. *Weinstock* at ¶ 9-10; *Hampton* at ¶ 29-30. A trial court abuses its discretion when it exercises its judgment in an unwarranted way regarding a matter over which it has discretionary authority. *Johnson v. Abdullah*, 166 Ohio St.3d 427, 2021-Ohio-3304, ¶ 35. *See Watson v. Watson*, 10th Dist. No. 22AP-729,

2023-Ohio-3719, ¶ 15, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983) ("An abuse of discretion occurs when a decision is unreasonable, arbitrary, or unconscionable."). In the exercise of discretion, no court has the authority to commit an error of law. *Watson* at ¶ 15, citing *Johnson* at ¶ 38-39; *State v. Spirnak*, 10th Dist. No. 19AP-261, 2020-Ohio-6838, ¶ 16.

{¶ 21} For this assignment of error, McKinley argues a mistrial was warranted because the trial court's judgment entry "clearly relied on the commentary of [Hall's] counsel in chambers and evidence which was not offered or admitted." (Appellant's Brief at vii.) McKinley continues, "[t]he Trial Court's Decision repeatedly references the inadmissible Exhibit GG as a basis for the Court's determination that [McKinley] committed financial misconduct" and no curative instruction "could have [been] given [to] itself" to prevent the judge from relying on this information. (Appellant's Brief at 6, citing Divorce Decree at 33.) We disagree.

{¶ 22} McKinley's motion for mistrial was predicated on the off-the-record discussion of exhibit GG, a mortgage document that Hall's counsel attempted to introduce on redirect examination of Hall that had not been provided prior to trial and, in McKinley's view, was not responsive to questions asked on cross-examination. In moving for a mistrial, McKinley's counsel explained that, during the conversation in chambers, Hall's counsel represented that exhibit GG would be used to show McKinley forged Hall's signature on the mortgage and misappropriated the $58,061 that resulted from refinancing the Hillsboro property. In McKinley's view, as the trier of fact, the trial court could not "unhear" or ignore these "spurious allegations," warranting a mistrial. (Tr. Vol. 12 at 693, 699.) "[T]he Court cannot put [the story behind exhibit GG's purpose] out of its mind no matter how much the Court may try to do so." (Tr. Vol. 12 at 699.)

{¶ 23} The record of this case does not show McKinley demonstrated grounds for a mistrial or that she was otherwise denied a fair trial. First, the trial court in denying the motion emphasized that the in-chambers discussion of exhibit GG did nothing to alter the court's opinion of the parties and was duplicative with the parties' testimony. Specifically, the trial court remarked that the case is "riddled with allegations of misconduct" and the allegations in-chambers was not "any different than anything else" the court had heard concerning misappropriation, that the discussion of exhibit GG did not interfere with the

court's ability to do its job, and the court did not need exhibit GG and could instead rely on the testimony of the parties. (Tr. Vol. 12 at 703.) The trial court explained, "I don't have to have GG in. * * * I have testimony of the parties that I must rely on if I don't have the exhibits. * * * It doesn't interfere with the Court's ability to do its job in any way. It's just another part of this case which the parties have already talked about and testified to." (Tr. Vol. 12 at 704-05.)

{¶ 24} Second, although the trial court briefly cited exhibit GG in its decision, that reference did not raise issues concerning the allegation of forgery or otherwise imply that exhibit GG weakened McKinley's credibility. Rather, the trial court referenced exhibit GG as additional support for Hall's testimony regarding his Hillsboro residence. Contrary to McKinley's argument, the trial court did not "clearly rel[y] on the commentary of [Hall's] counsel in chambers" to conclude McKinley misappropriated the $58,061. (Appellant's Brief at vii.)

{¶ 25} Lastly, to the extent McKinley argues the motion should have been granted due to the trial court relying on evidence that was not admitted, she has not demonstrated prejudice. Hall testified the $58,061 check was "from [his] mortgage company," he got it from the mailbox and gave it to McKinley, he never saw the check again, the money was not in one of his accounts, and McKinley was never able to explain or document where that money went. (Tr. Vol. 7 at 430-31.) McKinley testified she generally managed the couple's finances and "took over the finances" when Hall was deployed overseas, that a check for $58,061 in Hall's name arrived to the Hillsboro property sometime in 2014, she deposited it in her Nationwide money market account, and she could not find any deposit for that amount in any of the records produced for trial. (Tr. Vol. 4 at 176-77.) Even without exhibit GG or the related in-chambers discussion, the record of this case shows both that McKinley's testimony, standing on its own, created significant credibility concerns on this topic and that the parties' testimony supported the trial court's decision concerning the $58,061 check.

{¶ 26} Overall, McKinley has not demonstrated an irregularity in the proceedings by which she was prevented from having a fair trial or that the trial court otherwise abused its discretion in denying her motion for a mistrial based on the in-chambers discussion of exhibit GG. Accordingly, McKinley's first assignment of error is overruled.

**B. Classification and division of assets and debts**

{¶ 27} Because the second and third assignments of error are related, we address them together. In McKinley's second assignment of error, she contends the trial court abused its discretion by not equitably dividing the assets and debts pursuant to R.C. 3105.171. With her third assignment of error, McKinley similarly contends the trial court abused its discretion in how it classified debts as marital or separate under R.C. 3105.171.

{¶ 28} In divorce proceedings, the trial court is obligated to determine what constitutes marital property and what constitutes separate property. R.C. 3105.171(B). Marital property, as relevant to this case, includes "[a]ll real and personal property that currently is owned by either or both of the spouses, * * * and that was acquired by either or both of the spouses during the marriage." R.C. 3105.171(A)(3)(a)(i). Marital property does not include separate property, which is also defined by statute. R.C. 3105.171(A)(3)(b).

{¶ 29} "[S]eparate property" in pertinent part means "all real and personal property and any interest in real or personal property that is found by the court to be any of the following: * * * [a]ny real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage" and "[p]assive income and appreciation acquired from separate property by one spouse during the marriage." R.C. 3105.171(A)(6)(a)(ii) and (iii). Generally, "the holding of title to property by one spouse individually or by both spouses in a form of co-ownership does not determine whether the property is marital property or separate property" and "[t]he commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, except when the separate property is not traceable." R.C. 3105.171(H); 3105.171(A)(6)(b). The party seeking to have property declared separate has the burden of proof by a preponderance of the evidence. *Dunham v. Dunham*, 171 Ohio App.3d 147, 2007-Ohio-1167, ¶ 20 (10th Dist.). *Habtemariam v. Worku*, 10th Dist. No. 19AP-47, 2020-Ohio-3044, ¶ 41, quoting *Wolf-Sabatino v. Sabatino*, 10th Dist. No. 10AP-1161, 2011-Ohio-6819, ¶ 11 (" 'When parties contest whether an asset is marital or separate property, the asset is presumed marital property unless proven otherwise.' ").

{¶ 30} Once the trial court determines the character of the property, the trial court must then divide the marital and separate property equitably between the spouses in accordance with the statute. R.C. 3105.171(B). Generally, the trial court must disburse a

spouse's separate property to that spouse, subject to an exception for distributive awards. R.C. 3105.171(D), (E), and (A)(1). As to marital property, R.C. 3105.171(C)(1) directs the court to divide marital property equally, unless an equal division would be inequitable, in which case the trial court "shall divide it between the spouses in the manner the trial court determines equitable." In dividing marital property, the trial court must consider all relevant factors, including those listed in R.C. 3105.171(F). R.C. 3105.171(C)(1).

{¶ 31} A trial court's classification of property as separate or marital is reviewed under a manifest weight of the evidence standard. *Habtemariam* at ¶ 45; *Dunham*, citing *An v. Manson*, 10th Dist. No. 06AP-90, 2006-Ohio-6733. "When reviewing for manifest weight, the appellate court must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." *In re Z.C.*, 173 Ohio St.3d 359, 2023-Ohio-4703, ¶ 14, citing *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. After classifying the property as marital or separate, the trial court has broad discretion to make divisions of property and will not be overturned absent an abuse of that discretion. *Habtemariam*; *Heyman v. Heyman*, 10th Dist. No. 05AP-475, 2006-Ohio-1345, ¶ 15; *Hall v. Bricker*, 10th Dist. No. 23AP-140, 2024-Ohio-1339, ¶ 27; *Middendorf v. Middendorf*, 82 Ohio St.3d 397, 401 (1998).

{¶ 32} In this case, McKinley first argues that Hall offered no evidence that he had any separate property in the United States Postal Service Pension or the United States Navy Pension and, therefore, the trial court erred in using a coverture fraction to divide Hall's accounts instead of dividing them equally between the parties.

{¶ 33} Pension and retirement benefits earned during a marriage, whether vested or not, are marital assets that must be divided by the trial court. *Hall* at ¶ 90; *Daniel v. Daniel*, 139 Ohio St.3d 275, 2014-Ohio-1161, ¶ 1, 8-9, 17, citing R.C. 3105.171(A)(3)(a)(i). Where a retirement benefit, such as a military pension, has not yet matured, one acceptable way for a trial court to divide such an asset is to use the "coverture fraction," a computation to determine the marital portion of the pension benefit using a ratio comprised of the length of the marriage compared to the length of creditable service. *Daniel* at ¶ 11-15; *Hall* at ¶ 95. The precise value of the benefit is unnecessary for the court to utilize the coverture fraction;

the dates marking the duration of the marriage and the dates of the spouse's creditable service is sufficient. *Daniel* at ¶ 15.

{¶ 34} The trial court in this case determined it was equitable that the parties each be awarded 50 percent of the marital portion of the parties' retirement and pension accounts, consisting of the benefits accrued during the de facto marriage period and employing a traditional coverture fraction. The trial court ordered the parties to prepare and file Qualified Domestic Relation Orders and similar orders to divide the pension and retirement accounts. The trial court's orders were in part based on its finding that McKinley testified the marital portion of Hall's pensions should be divided equally, with each party retaining their separate property interest falling outside of the marital portion.

{¶ 35} Initially, we agree that McKinley testified the trial court should award her half of Hall's pensions accrued during the term of the marriage, which was the approach ultimately taken by the trial court. Therefore, to the extent McKinley attempts to now challenge a position she advocated to the trial court, doing so is improper. *See Quaye v. N. Mkt. Dev. Auth.*, 10th Dist. No. 15AP-1102, 2017-Ohio-7412, ¶ 28-29 ("An appellant cannot change the theory of [their] case and present new arguments for the first time on appeal."); *Dunham* at ¶ 21 (explaining that a party may not challenge on appeal a position he or she requested the trial court to take); *Gerlach v. Gerlach*, 10th Dist. No. 03AP-22, 2004-Ohio-1607, ¶ 37-38 (refusing to allow the appellant to challenge the trial court's distribution of assets and liabilities that he proposed at trial).

{¶ 36} Moreover, the parties stipulated to the duration of the marriage, and Hall testified as to the dates of his military service and employment with the postal service. McKinley also admits Hall additionally provided premarital documentary evidence to show a portion of the pensions fell outside the duration of the marriage. On this record, McKinley has not demonstrated the trial court erred in using a coverture fracture to determine the marital portion of Hall's military and post office pensions or otherwise failed to equitably divide these assets. For these reasons, the portion of McKinley's second assignment of error challenging the trial court's division of Hall's pensions lacks merit.

{¶ 37} McKinley next challenges aspects of the trial court's allocation of the parties' debt. "To ensure an appropriate division of marital property, a trial court must take into account both the assets and the liabilities of the spouses." *Wood v. Wood*, 10th Dist. No.

10AP-513, 2011-Ohio-679, ¶ 15, citing R.C. 3105.171(F)(2). "Thus, the duty to equitably divide the marital property necessarily obligates the trial court to divide the marital debt." *Id.* at ¶ 15. "[A]llocation of marital debt is guided by the same equitable factors contained in R.C. 3105.171." *Hall* at ¶ 111.

{¶ 38} "Marital debt has been defined as any debt incurred during the marriage for the joint benefit of the parties or for a valid marital purpose." *Sangeri v. Yerra*, 10th Dist. No. 19AP-675, 2020-Ohio-5520, ¶ 48, citing *Ketchum v. Ketchum*, 7th Dist. No. 2001 CO 60, 2003-Ohio-2559, ¶ 47. "Like assets, debts accumulated during the marriage are generally presumed to be marital unless it can be proved they are separate." *Hall* at ¶ 110. "Accordingly, when a debt is incurred during the marriage, the burden is on the party seeking to have the debt classified as separate debt to demonstrate by a preponderance of the evidence that the debt was the separate obligation of the other spouse." *Id.* A trial court's allocation of debts in a divorce action is reviewed for an abuse of discretion. *Sangeri* at ¶ 50.

{¶ 39} Here, McKinley asserts the trial court refused to consider her payment of fees related to Hall's custody case involving children from another relationship, her in vitro fertilization and his vasectomy reversal, and his high balance credit cards as Hall's separate debt. In declining to assign these items as Hall's separate debt, the trial court reasoned these debts were paid using marital funds during the marriage, McKinley did not provide evidence that she expected to be reimbursed, she handled the bulk of the parties' financial decisions, and there was no indication the parties' did not incur the debts as part of and in support of their relationship and desired family dynamic. On appeal, McKinley does not set forth any legal reasoning why the trial court erred in this analysis. Instead, she appears to only contend she provided records to support her claims. Because McKinley has not explained how the trial court erred in declining to attribute these debts solely to Hall, she has not met her burden to affirmatively demonstrate error in this instance. *See State v. Sims*, 10th Dist. No. 14AP-1025, 2016-Ohio-4763, ¶ 11 (stating general rule that an appellant bears the burden of affirmatively demonstrating error on appeal); *J.W. v. D.W.*, 10th Dist. No. 19AP-52, 2019-Ohio-4018, ¶ 55 (noting it is not the duty of an appellate court to create an argument on an appellant's behalf).

{¶ 40} As additional debts that McKinley contends should have been classified as Hall's separate debt, she lists: a Chase credit card opened after the parties separated in 2016; $8,000 to install a security system on his separate property; paying off his Discover and USAA/Navy Federal credit cards prior to separation; opening, after separation, credit cards through Best Buy, Greensky, Lowe's, and Home Depot to refurbish his separate property; using the Big Sandy credit card after separation for furniture purchases for his separate property; and taking a trip to Italy on his credit card.

{¶ 41} As to the credit card debt, the trial court determined the parties had roughly the same amount of credit card debt in each parties' name, with McKinley owing approximately $105,000 and Hall owing approximately $99,000. The trial court assigned the Lowe's, Home Depot, and Greensky cards as Hall's separate debt thereby reducing the total marital debt, which when split equally resulted in Hall owing McKinley approximately $17,000.

{¶ 42} McKinley has not shown the trial court erred in this regard since the challenged credit card debt largely involved debt incurred within the stipulated April 2010 to April 2020 de facto marriage period and the testimony in this case did not show the credit card use should otherwise be considered Hall's separate debt. Specifically, the Chase credit cards referenced by McKinley were opened in 2018, prior to the end of the de facto marriage period, and Hall testified he used those cards for living expenses while he was deployed in Michigan. Hall opened the Best Buy credit card while deployed in Michigan first to buy speakers as a gift for his son and then primarily used that card to buy gas. McKinley is correct that Hall used his Big Sandy credit card to purchase furniture for his Hillsboro property, but he did so to replace the furniture McKinley took out of the property. Concerning the installation of a security system on the Hillsboro property in 2019, we initially note that no testimony supported the $8,000.00 figure; as to the $2,417.14 figure that was supported by Hall's testimony, the testimony established the monthly service payments were deducted from Hall's Pathways Credit Union checking account and was unclear as to the method of payment for an $800.00 downpayment to ADT. Moreover, McKinley did not ask for the alleged $8,000.00 security system debt to be labeled Hall's separate debt in her proposed findings of fact and conclusions of law. As to the Italy charge, the evidence only showed Hall took a trip without McKinley to Italy in fall 2018 for a

wedding, with no testimony as to which credit card was affected or the amount involved, and McKinley did not ask for the Italy trip debt to be fully attributed to Hall in her proposed findings of fact and conclusions of law.

{¶ 43} McKinley does cite legal authority in support of her assertion that the amount they paid off of the Discover and USAA/Navy Federal credit cards should be treated as Hall's separate debt. She cites to *An* for the proposition that debts inuring to the benefit of one spouse, or which one spouse incurred prior to the marriage but which are paid off during the marriage, do not lose their separate nature. *Id.* at ¶ 25.

{¶ 44} Initially, *An* is not directly in support of McKinley's assertions since its holding addressed a trial court outcome opposite to the one here and only went so far as to hold there was no abuse of discretion. In that case, the trial court found the husband should be credited for one-half of the amount the parties' paid to reduce the debt the wife accumulated before their marriage. Since the record did contain testimony that the wife entered the marriage with that debt and the debt had been paid down using either marital or the husband's funds, the appellate court found no cause to find an abuse of discretion considering the trial court was free to believe that testimony. The *An* court did not establish a bright-line rule in this regard, as implied by McKinley, and, in fact, counseled against it. *Id.* at ¶ 20, citing *Cherry v. Cherry*, 66 Ohio St.2d 348, 355 (1981) ("It is inadvisable, and in practice impossible, for any court to attempt to set down a flat rule concerning property division in a divorce.").

{¶ 45} In this case, McKinley essentially asks to be compensated for increasing her own debt in order to pay down Hall's separate debt. Her testimony is not clear, but it appears she testified that she opened a Navy Federal account and a Discover card to absorb some of Hall's debt, and that Hall's debt at least in part was housed on his own Discover card or cards. She testified the challenged debt was accrued for: her in vitro fertilization attempts in 2013 and 2014; fees for a private investigator, a guardian ad litem, and attorney fees relating to the custody and child support case; Hall's separate purchases when living separately from McKinley when deployed to Michigan; and a small amount of miscellaneous personal charges. Furthermore, according to McKinley, they chose to pay down Hall's debt in order for them to be able to refinance the Hillsboro property at a better rate, which would enable them to take out an equity loan to make improvements on both

of their properties and then pay down her debt. She also testified Hall worked part time to address the debt.

{¶ 46} The cited testimony does not support reversing the trial court judgment on this matter. The testimony, as remarked by the trial court, was not presented in a manner to understand what debts were accrued on each card and the source of that debt. Furthermore, the causes for the debt accrual were matters the trial court determined to be for the benefit of the marriage. Overall, relating to the Discover and USAA/Navy Federal credit cards, we find McKinley has not demonstrated the debts she references are the separate obligation of Hall or that the trial court otherwise erred in determining the parties' debts should be equally divided aside from the Lowe's, Home Depot, and Greensky credit cards. As a result, McKinley's challenge to the trial court's decision on debt allocations in her second and third assignments of error lack merit.

{¶ 47} Lastly, McKinley argues the trial court incorrectly determined the taxes they filed as "married filing separately" during the marriage are separate debts instead of marital debts. (Appellant's Brief at 11.) According to McKinley, after she filed for divorce in 2018, Hall "ceased sharing the liability or his refund" so the trial court should have equalized this discrepancy. (Appellant's Brief at 11.) The trial court considered this argument and disagreed, reasoning that the parties filed their taxes within the de facto marriage term in a manner to load the debt, deductions, and interest payments in a manner that they believed was most beneficial to them and that McKinley was responsible for the financial decision making. While it is apparent McKinley disagrees with this decision, she does not provide this court with the factual basis to support her contention that Hall improperly retained marital tax money that should have been split. "It is not the duty of this court to search the record for evidence to support an appellant's argument as to alleged error." *Abraham v. BP Exploration & Oil, Inc.*, 149 Ohio App.3d 471, 2002-Ohio-4392, ¶ 32 (10th Dist.). Moreover, McKinley has likewise not demonstrated the trial court abused its discretion in weighing any facts concerning the taxes or in making that allocation. Therefore, her challenge to the trial court's treatment of the parties' tax liabilities and refunds in the third assignment of error falls short of demonstrating reversable error.

{¶ 48} Overall, having considered McKinley's arguments, we do not find cause to reverse the trial court judgment due to the classification and division of Hall's pensions and

variety of challenged debts.  Accordingly, McKinley's second and third assignments of error are overruled.

### C.  Financial misconduct

{¶ 49} In her fourth assignment of error, McKinley contends the trial court abused its discretion in finding financial misconduct since, in her view, that determination was based on exhibit GG, which was withdrawn from evidence, and the court's rationale was "illogical" since the trial court found she received the $58,061 check in 2014 but that check was the result of a 2016 refinance of the mortgage.  (Appellant's Brief at 13.)  She adds that it is Hall who committed financial misconduct by listing only one address for two parcels of land he owns, and a trial court's failure to award a party one-half of a hidden asset is reversible error.

{¶ 50} Initially, we note that while McKinley in her statement of issues to be resolved states that the trial court erred in awarding Hall money "for which [he] had already claimed the benefit," she does not provide an argument to explain her position. (Appellant's Brief at vii.)  As a result, we decline to address this issue.  App.R. 16(A)(7), 12(A)(1)(b), and 12(A)(2).

{¶ 51} McKinley's remaining arguments concerning financial misconduct lack merit.  The term " 'financial misconduct' " includes, but is not limited to " 'the dissipation, destruction, concealment, nondisclosure, or fraudulent disposition of assets.' " *Hall*, 2024-Ohio-1339, at ¶ 45, quoting R.C. 3105.171(E)(4). "Financial misconduct necessarily implicates some type of knowing wrongdoing, such as one spouse's intentional interference with the other spouse's property rights or the offending spouse's profiteering from the misconduct." *Id.*  The burden of proving financial misconduct rests with the complaining spouse.  *Id.* at ¶ 47.  A trial court's determination regarding financial misconduct will not be reversed unless it is against the manifest weight of the evidence.  *Hall* at ¶ 48, citing *Kowalkowski-Tippett v. Tippett*, 10th Dist. No. 20AP-228, 2021-Ohio-4220, ¶ 16, citing *Best v. Best*, 10th Dist. No. 11AP-239, 2011-Ohio-6668, ¶ 18.

{¶ 52} First, the record does not support McKinley's argument concerning Hall's financial misconduct by hiding a property.  Hall testified the Hillsboro property consisted of two parcel numbers and that the value of the property reflects both parcels.  Hall's credibility on this point was strengthened by the property deed, which listed two tracks of land.  Relying on the deed, the trial court found Hall is the titled owner of two parcels of

real estate with one listed address, collectively valued at $175,000. To the extent McKinley created a conflict in evidence on this point, the trial court was in the best position to weigh the evidence and reasonable inferences with consideration of the parties' credibility. McKinley has not shown the trial court erred.

{¶ 53} McKinley has likewise not shown the trial court's determination that she committed financial misconduct was against the manifest weight of the evidence. As discussed in relation to the first assignment of error concerning McKinley's motion for a mistrial, the record of this case shows—even without exhibit GG or the trial court's discussion of refinancing dates—the trial court's decision concerning the $58,061 check is supported by the evidence. Hall testified the $58,061 check was "from his mortgage company," he got it from the mailbox and gave it to McKinley, he never saw the check again, the money was not in one of his accounts, and McKinley never was able to explain or document where that money went. (Tr. Vol. 7 at 430-31.) McKinley testified she generally managed the couple's finances and "took over the finances" when Hall was deployed overseas, that a check for $58,061 in Hall's name arrived to the Hillsboro property sometime in 2014, she deposited it in her Nationwide money market account, and she could not find any deposit for that amount in any of the records produced for trial. (Tr. Vol. 4 at 176-77.) McKinley's testimony lacked credibility on this issue, and it was the province of the trial court to weigh any conflicts in the evidence.

{¶ 54} Overall, the trial court did not clearly lose its way and create such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. Accordingly, McKinley's fourth assignment of error is overruled.

**D. Admission of Hall's exhibits**

{¶ 55} In her fifth assignment of error, McKinley contends the trial court committed reversible error in admitting Hall's exhibits, which McKinley argues were untimely and against court orders. She contends she was prejudiced by being unable to effectively rebut these "last minute claims and evidence" akin to *Lin v. Khan*, 10th Dist. No. 93APE09-1252, (May 3, 1994). (Appellant's Brief at 16.) A trial court's ruling on the admission of evidence is reviewed on appeal for an abuse of discretion. *Roty v. Battelle Mem. Inst.*, 10th Dist. No. 18AP-956, 2020-Ohio-4389, ¶ 10. *See Cairelli v. Brunner*, 10th Dist. No. 15AP-854, 2016-Ohio-5535, ¶ 49 (explaining that a trial court has the discretion to permit a party to

supplement the record with additional evidence). "Moreover, even in the event of an abuse of discretion, an appellate court will affirm the trial court's evidentiary ruling unless the abuse materially prejudiced a party." *Whitmer v. Zochowski*, 10th Dist. No. 15AP-52, 2016-Ohio-4764, ¶ 68. *Roty* at ¶ 22. *See generally* App.R. 12.

{¶ 56} In this case, McKinley has not demonstrated the trial court abused its discretion. McKinley argues the trial court generally erred in permitting Hall to supplement his trial notebook with exhibits "day after day after day" with the "excuse" that it would assist the court. (Appellant's Brief at 14, 16.) However, unlike *Lin*, McKinley has not identified the instances she contends the trial court erred in admitting Hall's exhibits or developed arguments regarding those instances. As a result, we are unable to review McKinley's assertion that the trial court erred to her prejudice since we cannot analyze how the admission of evidence impacted her trial and the resulting divorce decree. *See Whitmer* at ¶ 68; *Miller v. Johnson & Angelo*, 10th Dist. No. 01AP-1210, 2002-Ohio-3681, ¶ 2 ("The burden of affirmatively demonstrating error on appeal rests with the [appellant]."); App.R. 9 and 16(A)(7). *See also Abraham* at ¶ 32 ("It is not the duty of this court to search the record for evidence to support an appellant's argument as to alleged error.").

{¶ 57} Moreover, we note the trial court in this case allowed both parties to supplement their evidence throughout the case, and McKinley at points acknowledged the trial court's ability to make orders it deems appropriate to provide the court with "the full picture of what happened during [the] marriage." (Tr. Vol. 3 at 108.) We find no indication the trial court treated McKinley unfairly. Considering all the above, McKinley has not demonstrated the trial court abused its discretion in admitting Hall's exhibits. Accordingly, McKinley's fifth assignment of error is overruled.

### E. "Forcing" McKinley to produce summary exhibits

{¶ 58} In her sixth assignment of error, McKinley contends the trial court committed reversible error by "forcing" her to produce summary exhibits mid-trial. (Appellant's Brief at 16.) As provided in the previous assignment of error, a trial court's ruling on the admission of evidence is generally reviewed on appeal for an abuse of discretion and will not be overturned unless the improperly admitted evidence materially prejudiced the appellant. *Roty* at ¶ 10, 22; *Cairelli* at ¶ 49; *Whitmer* at ¶ 68. *See generally* App.R. 12. However, because McKinley did not object at trial to submitting a summary

spreadsheet to assist the trial court, we review this issue for plain error. *State v. Knuff*, ___ Ohio St.3d ___, 2024-Ohio-902, ¶ 117.

**{¶ 59}** "The Rules of Civil Procedure do not provide for plain-error review." *Jones*, 2020-Ohio-3780, at ¶ 24. The Supreme Court has explained that "in recognizing plain error in a civil case, a court must proceed with utmost caution, limiting use of the doctrine to 'the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself.' " *Id.* at ¶ 24, quoting *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 122-23 (1997).

**{¶ 60}** At the outset, we find McKinley's contentions that the trial court berated her, repeatedly stated she was not credible, and cut her off from presenting evidence regarding furniture and personal property do not support the assignment of error. "This court rules on assignments of error," not unconnected arguments. *Huntington Natl. Bank v. Burda*, 10th Dist. No. 08AP-658, 2009-Ohio-1752, ¶ 21; *id.*, quoting App.R. 12(A)(1)(b) (stating " 'a court of appeals shall * * * [d]etermine the appeal on its merits on the assignments of error set forth in the briefs' "); *Williams v. Barrick*, 10th Dist. No. 08AP-133, 2008-Ohio-4592, ¶ 28 (holding that appellate courts "rule[] on assignments of error only, and will not address mere arguments"). Because McKinley only challenged the trial court's order to provide a summary spreadsheet in her assignment of error, we will consider that question alone.

**{¶ 61}** First, because McKinley has not provided this court with a legally supported argument as to plain error, her assignment of error necessarily fails. "It is not within our role as an appellate court to construct a legal argument for [the appellant] as to why this case satisfies the civil plain error standard." *Khasawneh v. Aldamen*, 10th Dist. No. 23AP-276, 2024-Ohio-937, ¶ 10. Nevertheless, even had McKinley properly argued plain error, her contention concerning the trial court's order to produce a summary exhibit fails on the merits.

**{¶ 62}** The summary sheet exhibit referenced here arose toward the beginning of McKinley's testimony, on direct. McKinley asked the trial court to be reimbursed for paying down what she contended was Hall's separate debt using her own credit cards or accounts. McKinley's testimony referenced multiple credit cards, each holding balances comprised of

a variety of charges, including multiple items she argued should be labeled Hall's separate debt. However, McKinley's testimony was vague on the value of the challenged separate debt, amounting to tentative estimates or ranges spanning thousands of dollars. McKinley, her counsel, and the trial court attempted to reference line items on statements among over four thousand pages of exhibits to extract a value of the challenged debts.

{¶ 63} Eventually, the trial court expressed it was having difficulty assessing and tracking the value of the debts McKinley sought reimbursement for and understanding the format of the evidence she provided. The presentation of evidence "is not helping the Court." (Tr. Vol. 2 at 60.) The trial court also put McKinley on notice that the court would not credit testimony amounting to "generalizations" of value or that failed to show the source of the money used to pay the debts. (Tr. Vol. 2 at 63.) After stating the court "need[ed] * * * better pathway[s] to the actual dollars" than what the testimony provided or was readily comprehendible from the exhibits, the trial court spoke to the parties off record. Back on record, the trial court relayed that the court "asked counsel to prepare more of a spreadsheet of the actual numbers and dates [and] credit card companies" and that McKinley's counsel would complete the spreadsheet that evening. (Tr. Vol. 2 at 66, 71.) The following day, McKinley's counsel introduced the summary spreadsheet as an exhibit and used it to guide her questioning of McKinley.

{¶ 64} On appeal, McKinley admits her attempt to "tell her story" involved her submission of "copious, perhaps even excessive documentation." (Appellant's Brief at 17.) However, she indicates this amount of information was required by the case management order and argues the trial court should have allowed her to present her case in accordance with that order and as "required by * * * this District, State, and the U.S. Supreme Court." (Appellant's Brief at 17.) McKinley adds the trial court ordered her to present the information in a different manner in less than 24 hours. She asks this court to reverse the judgment and remand the matter so she is "able to present evidence in the manner she believes best presents her case." (Appellant's Brief at 18.)

{¶ 65} We find no error, plain or otherwise. "[I]t is well-settled that ' "[a] trial court has the discretionary authority to control the mode and order of proof." ' " *Ahmed v. Wise*, 10th Dist. No. 12AP-613, 2013-Ohio-2211, ¶ 20, quoting *Winkler v. Winkler*, 10th Dist. No. 02AP-937, 2003-Ohio-2418, ¶ 93, quoting *Mason v. Swartz*, 76 Ohio App.3d 43, 54 (6th

Dist.1991). The trial court acted within its authority in ordering McKinley to present her exhibits in a way to assist the court. Moreover, while the trial court could have simply let the issue fail without McKinley adequately valuing or tracking the debt associated with her request for reimbursement, the trial court attempted to assist her in doing so, thereby undermining any prejudice to McKinley. Having reviewed the record, the trial court's order to summarize the values and source of certain debts did not " 'seriously affect[] the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself.' " *Jones* at ¶ 24, quoting *Goldfuss* at 122-23. Nothing in the facts before us makes this one of those extremely rare cases in which plain error applies. Accordingly, McKinley's sixth assignment of error is overruled.

**IV. Conclusion**

{¶ 66} Having overruled McKinley's six assignments of error, we affirm the judgment and divorce decree of the Franklin County Court of Common Pleas, Division of Domestic Relations.

*Judgment affirmed.*
*Cross-appeal dismissed.*

LUPER SCHUSTER and EDELSTEIN, JJ., concur.